IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CASE No. |
| | ) | 1:20-CR-428-ELR-AJB |
| | ) | |
| MAURICE BANKS, | ) | |
| Defendant. | ) | |

## **DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION ORDER**

Mr. Banks was arraigned in this case on February 11, 2021. Doc. 45. The indictment alleges one count of conspiracy to steal, take away, and carry firearms that have been shipped and transported in interstate commerce from the premises of 10 different gun store locations and two counts of theft of firearms from a federal firearms licensee.

A detention hearing was held on February 16, 2021. Doc. 50. At the hearing, the government stated that it had evidence that "Mr. Banks' phone" was located at or near the scene of many of the burglaries. The Court ordered that Mr. Banks be detained because "defendant evaded capture after indictment for approximately 2 months. The evidence against him is strong. He has a lengthy criminal record and spotty, uncertain employment." Doc. 51. Mr. Banks now asks this Court to reconsider its ruling so that he can be released to work with his attorney to fight the allegations against him. He asserts that the government is

prolonging the case against him by suggesting there is additional discovery, but it has yet to provide it.

At the detention hearing on February 16, 2021, defense counsel provided the government with a 1TB hard drive to house the discovery in the case. Counsel received the discovery on March 2, 2021. The initial and supplemental discovery provided at that time includes multiple videos, phone dumps, and investigative reports related to ten alleged robberies. On April 13, 2021, defense counsel contacted the government asking where in discovery she could find the information about Mr. Banks' phone. The government responded that additional discovery would be provided soon, including discovery related to Mr. Banks' phone and phone records. The government later responded that some phone records had been produced and defense counsel agrees that this is true.

On April 21, 2021, counsel contacted the government to find out when the supplemental discovery would be provided. On April 22, counsel was notified that additional discovery will include search warrants, more interview recordings, Mr. Banks' phone dump and related reports, and more reports of investigation. The government informed counsel this discovery would not be ready to be produced until approximately April 30th. Counsel has not received the discovery.

Counsel has also emailed the government making specific requests for items in discovery and has not received a response to those requests. Mr. Banks asserts

that it is a violation of his Due Process rights to continue to hold him without producing all of the evidence that the government allegedly has to prove his involvement in the charged crimes.

Additionally, counsel has reviewed the discovery provided thus far. The discovery does not show that "Mr. Banks' phone" was at or near the scene of the burglaries. During his arrest, officers seized a flip phone with telephone number 916-805-6157 from Mr. Banks. It does not appear that phone records related to this phone have been produced yet.

In one report, the agents discuss a phone subscribed to Mr. Banks' girlfriend, Lashiquita Freeman and believed to be use by Mr. Banks. The reports provided show that this phone *was not* near any of the burglaries. See below:

2. The telephone bearing telephone number 678-791-9329 is subscribed to Lashiquita Freeman at 1909 Lake Point Drive, Stone Mountain, Georgia.

3. A federal search warrant had previously been served on Verizon to provide historical cell site/sector data amongst other data for this telephone. That data was returned from the provider and IOI Griffith had the data entered into PLX, a telephone analysis tool. IOI Griffith analyzed the historical cell site data and found the following information for telephone number 678-791-9329:

- The telephone was not in the area of an attempted burglary at David's Gun Room between 10:00 pm on 8/31/2020 and 8:00 am on 9/1/2020.
- The telephone was not in the area of a burglary at the Gun Lobby between 10:40 pm on 9/3/2020 and 1:40 am on 9/4/2020.
- The telephone was not in the area of an attempted burglary at Appalachian Gun & Pawn between 11:22 pm on 9/4/2020 and 2:22 am on 9/5/2020.
- The telephone was not in the area of an attempted burglary at Chucks Firearms between 2:40 am on 9/5/2020 and 5:40 am on 9/5/2020.
- The telephone was not in the area of an attempted burglary at X3 Enterprises between 4:24 am on 9/5/2020 and 7:24 am on 9/5/2020.
- The telephone was not in the area of an attempted burglary at Deaton's Gun Shop between 3:37 am on 9/5/2020 and 8:37 am on 9/5/2020.

- The telephone was not in the area of suspicious activity at Blackpoint Tactical between 3:30 am on 9/8/2020 and 8:30 am on 9/8/2020.
- The telephone was not in the area of an attempted burglary at Bulls Eye Marksman between 8:05 pm on 9/10/2020 and 12:05 am on 9/11/2020.
- The telephone was not in the area of an attempted burglary at Trigger time between 11:00 pm on 9/10/2020 and 2:00 am on 9/11/2020.
- The telephone was not in the area of a burglary at Foxhole Gun & Archery between 11:34 pm on 9/10/2020 and 2:34 on 9/11/2020.
- The telephone was not in the area of a burglary at Cherokee Discount Gun between 4:25 am on 9/13/2020 and 8:25 am on 9/13/2020.

ATF – 000261-262.

The reports also discuss two other phones alleged to be used by Mr. Banks, even though there is no subscriber information for these phones. The phone numbers associated with these phones are 470-230-4141 and 470-773-7787. The phone associated with the 4141 number only had records up to 8/20/20 and does not appear to be associated with any of the burglaries. Agents analyzed cell site data and alleged that the 7787 number was at or near the scene of some of the burglaries during very large swaths of time (including a 10-hour time period surrounding one burglary). See below:

4. A federal search warrant had previously been served on Verizon to provide historical cell site/sector data amongst other data for these telephones. That data was returned from the provider and IOI Griffith had the data entered into PLX, a telephone analysis tool. IOI Griffith analyzed the historical cell site data and found the following information for telephone number 470-773-7787:

- The telephone was near the area of an attempted burglary at David's Gun Room between 10:00 pm on 8/31/2020 and 8:00 am on 9/1/2020.
- The telephone was in the area of a burglary at the Gun Lobby between 10:40 pm on 9/3/2020 and 1:40 am on 9/4/2020.
- The telephone was near the area of an attempted burglary at Appalachian Gun & Pawn between 11:22 pm on 9/4/2020 and 2:22 am on 9/5/2020.

- The telephone was near the area of an attempted burglary at Chucks Firearms between 2:40 am on 9/5/2020 and 5:40 am on 9/5/2020.
- The telephone was near the area of an attempted burglary at X3 Enterprises between 4:24 am on 9/5/2020 and 7:24 am on 9/5/2020.
- The telephone was near the area of an attempted burglary at Deaton's Gun Shop between 3:37 am on 9/5/2020 and 8:37 am on 9/5/2020.
- The telephone was near the area of suspicious activity at Blackpoint Tactical between 3:30 am on 9/8/2020 and 8:30 am on 9/8/2020.
- The telephone was in the area of an attempted burglary at Bulls Eye Marksman between 8:05 pm on 9/10/2020 and 12:05 am on 9/11/2020.
- The telephone was near the area of an attempted burglary at Trigger time between 11:00 pm on 9/10/2020 and 2:00 am on 9/11/2020.
- The telephone was in the area of a burglary at Foxhole Gun & Archery between 11:34 pm on 9/10/2020 and 2:34 on 9/11/2020.
- The telephone was not in the area of a burglary at Cherokee Discount Gun between 4:25 am on 9/13/2020 and 8:25 am on 9/13/2020, but can be seen traveling in north Georgia.

ATF-000393-394.

Additionally, the evidence provided thus far does not show that this 7787 phone was in the possession of Mr. Banks at or near the time of these burglaries. It appears the phone was recovered from a Uhaul truck that was being driven by to other men who were shoplifting and who used a Uhaul truck to get away. The government's theory now seems to be that Mr. Banks called the phone that was at or near the burglaries, not that his phone places him at or near the burglaries. This theory is apparently based on interviews of several co-defendants and/or participants in the alleged crimes who claim that Mr. Banks induced them to commit the alleged crimes.

Mr. Banks asserts that the evidence against him in this case is not strong as the government previously suggested. Indeed, for a person who was supposed to

have mastermind 10 burglaries of gun stores, there appears to be no evidence that he ever had any possession of any firearm at all, stolen or otherwise.

Therefore, Mr. Banks asks the Court to permit his release on bond so that he can continue to work with his lawyer to fight this case and prepare for trial. Should this Court have concerns about Mr. Banks' release, counsel asserts that those concerns can be mitigated through conditions crafted by this Court. Under the Bail Reform Act, a judicial officer:

> **shall order** the pretrial release of [a defendant] on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

18 U.S.C. § 3142(b) (emphasis added). *See also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention."). If the conditions outlined in subsection (b) will not serve to assure the appearance of the defendant at trial or will endanger another person or the community, the judicial officer ***shall order*** the pretrial release of the person "subject to the least restrictive further condition, or combination of conditions" necessary to meet the requirements of the Act. 18 U.S.C. § 3142(c)(1)(B). Thus, the Act limits the application of pretrial detention to a small category of offenders in a limited number of circumstances. *See Salerno, supra.* Only in rare circumstances should release be denied, ***and doubts regarding the propriety of***

***release should be resolved in favor of release.*** *United States v. Gebro,* 948 F.2d 1118, 1121 (9th Cir.1991) (emphasis added); *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir.1985).

As this Court is aware, pretrial detention is not merely a restriction on the liberty of a defendant. The United States Supreme Court has long held that fundamental Fifth and Sixth Amendment rights may also be irreparably compromised by such detention. *See Stack*, 342 U.S. at 4. The *Stack* court detailed the history and purpose of bail pending trial, stating, in pertinent part:

> From the passage of the Judiciary Act in 1789, 1 Stat. 7391, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), **federal law has unequivocally provided that a person arrested for a noncapital offense shall be admitted to bail.** This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless the right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle would lose its meaning.

*Id.* at 4 (emphasis added). Here, Mr. Banks and his attorney have to review discovery via Zoom, rather than in person because the Robert A. Deyton Detention Center appears to have multiple recent cases of Covid-19 requiring several pods to be on quarantine on a regular basis. Counsel and Mr. Banks would prefer to be able to meet at counsel's private office to discuss and review the discovery in the case.

Any concern the Court has about Mr. Banks criminal history can be managed with conditions imposed by this Court. Mr. Banks asserts that although he does have three prior felony convictions, they are not recent convictions. He has served his time for those convictions and he should not be denied bond based on those old cases. He has recent arrests for misdemeanor domestic violence, misdemeanor obstruction, misdemeanor theft by taking, and aggravated assault, but three of his recent cases are related to the same domestic dispute. He would like to resolve these cases with the Dekalb and Cobb County courts and he cannot do so while he is in federal custody.

Mr. Banks asserts that conditions can be crafted to ensure his appearance in and ensure the safety of the community. Mr. Banks is willing to abide by any conditions crafted by the Court, including wearing an ankle monitor and residing at the half-way house, if the Court deems such conditions to be appropriate.

Respectfully submitted this 7th day of May 2021.

*s/Saraliene S. Durrett*
SARALIENE S. DURRETT

## **CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this date electronically filed the foregoing motion for reconsideration of detention with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney(s) of record:

All Defense Counsel

All AUSAs of record

Respectfully submitted this 7th day of May 2021.

*s/Saraliene S. Durrett*
SARALIENE S. DURRETT
1800 Peachtree Street
Suite 300
Atlanta, GA 30309
(404) 433-0855
ssd@defendingatl.com